All rise. Illinois's Appellate Court. Wolfie Vision is now in session. I'm going to just state it. Our lawyer's going to tell us. Good morning, everybody. Have a seat. I have a clerk to call the case. Case 1-240761, Peoples v. Anthony Robinson. Good morning, everybody. In this case, each side will be given 15 minutes to argue their side of the case. And the appellant will have five minutes, if you wish, for the rebuttal of the case. You don't have to reserve any time for a rebuttal. So remember that the microphones are here to record. They amplify, but they're better at recording than amplifying. So just try and keep your voice up. All right. You're ready to proceed. Thank you, Your Honor. May the prosecutor, honorable justices, may it please the court. My name is Omar Jalil, and I represent Anthony Robinson, who seeks reversal of his first degree murder conviction based upon the ineffective assistance of his trial counsel, based upon the overwhelming other crimes evidence that was admitted against him. And alternatively, Mr. Robinson seeks a new sentencing hearing based upon the trial judge, utilizing factors that were never part of the record. So just a new sentencing hearing, not a new trial? It's for alternatively, Your Honor. I'm looking for first propositions of Mr. Robinson is seeking a new trial based upon his ineffective assistance of his counsel. Alternatively, he is seeking a new sentencing hearing based upon the trial judge utilizing factors that were not in the record. Thank you. In regards to the ineffective assistance counsel claim, it's based upon three separate arguments. The first argument is that trial counsel, during opening statements, made a statement to the jury that she was going to present to them an alternative theory of how the death occurred. She failed to do so. At Mr. Robinson's trial, his jury trial consisted essentially of two parts. The first part consisted of evidence related to the charge offense. Essentially, all of this evidence could have been presented by way of stipulation. The only thing that Mr. Robinson contested regarding the charge offense was mental state at the time that the victim died. Mr. Robinson's argument that trial counsel stated to the jury in opening statements was that the death resulted from an accidental choking during consensual sex. She told the jury that this was a tragic accident. However, during the evidentiary portion, trial counsel did not bring any evidence forth regarding this. She did not bring any. Hold on a second, Mr. Julia. There was testimony, and there was evidence from the defendant's videotaped interview about the tragic accident, about the chokehold during sex and how that happened. So there was some evidence presented to support the tragic accident theory, right? Well, in response to that, Your Honor, I would say two things. One, it wasn't as clear. The detective also testified that during one of the interviews that Mr. Robinson never made the statement to them. And the second thing would be that that evidence could be considered as simply just hearsay. If admitted as an admission from, it's not hearsay because it's an admission. But it is still an out-of-court statement. And it does not establish the entire breadth of what the defense was. The entire breadth of the defense was that Ms. Smith enjoyed rough sex, that she suggested initially to Mr. Robinson that they engage in consensual sex, that they engage in choking during consensual sex, that they engage in consensual choking beforehand, that prior to any of this consensual choking occurring, that Mr. Robinson spoke to his stepfather, who happened to be a neurologist, about the situation. And the stepfather would told him that as long as all parties are in agreement, there's nothing wrong with it. And then to further on top of that, because the stepfather was a neurologist, he showed Mr. Robinson proper techniques of how to safely choke someone during consensual sex. But the defense attorney doesn't say that last statement in her opening statement, does she? I know you would argue that part of the theory was that the stepfather neurologist had told him how to safely asphyxiate someone. But Ms. Plajic doesn't mention that at all in her opening statement, does she? Where does she say that that's what the evidence was going to show? Well, it's part and parcel of what the evidence would be. The evidence that she promised that would come in was that this is a tragic accident, that it occurred during consensual sex, and that that whole part of it was that if there's no evidence presented to support that theory, essentially what happened in Mr. Robinson's trial was all the evidence that the state presented regarding the cell phone records, whether he was the last person to be with her, whether he choked her, all of that was he conceded to it. There was no, he didn't contest that he wasn't with her. He didn't contest that he choked her. He didn't contest that he was the last person to be with her. The only thing he contested was whether that was an accident or whether it was an intentional act. And here, when she promises, the trial attorney promises that this is a tragic accident, and when she tries to bring in evidence during the defense case in chief about it being a tragic accident, she gets shot down by the trial court. And at that point, Mr. Robinson doesn't have his day in court. He never had an opportunity to challenge his conviction, his challenge of charges against him, when he is never able to bring forth all of the evidence regarding that this is an accidental death. Exactly what the trial attorney told the jury was that this is an accident, a tragic accident that occurred. But counsel, in the statement, you said the defendant, there's two statements from the defendant. There's the first statement from when he comes in the first time, where the police don't have all the forensic evidence at that point, and the second statement where then he admits to having consensual sex with the victim, and Mr. Robinson admits to engaging in some type of rough sexual encounter where there's choking involved. And he demonstrates this choking, but that this is all consensual, and that anything that's happening, that she was alive, to his knowledge, when he left. Right? Correct. So that goes into this accidental theory, doesn't it? That's his story. That's the theory of the defense, that this was a consensual act, and that he never had any intent to kill the victim. That advances the defendant's theory right there in his own statement. Well, again, Your Honor, I would say that there's two statements that are being made. So the jury could ignore the one that he is making the statement, and feel that the statement that, where this statement is not made. And especially when you're considering that the whole state's theory was that this didn't happen this way. Even when trial counsel was making these statements during opening statements, they were objecting to it. The state was objecting to these. And so, simply because Mr. Robinson made a statement that they engaged in consensual choking, doesn't change the fact that the jury never learned that they'd done this before. That this is something that potentially could have been a routine activity that they engaged in. And that she's the one that initially suggested the choking to occur. All of that is very relevant to... And that's what's being advanced by defense counsel, because this is a routine practice that she asked for. Well, no, Your Honor, what she said then is that that the consensual choking happened prior, and that Ms. Smith was the one that suggested it. That based upon the suggestion, Mr. Robinson then goes and speaks to his father about it. After he speaks to his father about it, they begin engaging in this consensual choking. But he alludes to that in his statement to the police, doesn't he? He alludes to the fact that they've done this before, in his second recorded interview. Your Honor, I would say that even if he is alluding to it, it's vastly different than presenting a defense based upon it. When the trial counsel is offering that, I'm going to tell you things that the state is not telling you. That I'm going to tell you all of these things that the state has forgotten to tell you. And then when she says that this death is not murder, that it's a tragic accident, and then fails to bring in any evidence supporting that, it's the defense counsel's responsibility to zealously advocate on behalf of her client. And that includes presenting a defense. And here, she promised a defense, that this is an alternative theory of how this occurred, opposite of what the state is telling you, what the state is forgetting to tell you. And yet, she doesn't bring any of this thing forward, and when she attempts to do so, she gets shot down by the trial judge. But as opposed to the cases that you cite too, in the ineffective assistance, thank you. Lewis and Ortiz. Lopez, or Lewis and Ortiz. This isn't a theory where it's some other guy. It's a some other guy theory. It's the one-armed man that did this. It is, in fact, it's either a consensual accident, your theory, or intentional, the state's theory. And so those cases kind of point to a different thing. There's another individual out there. But so you advance that theory. It's not that defense counsel said, there's going to be a witness. There will be a witness that says some other individual did this act. In fact, it was an accident. That's the theory, and that's the theory that was advanced through the case. Well, I would say that the cases that I cited too are just limited to that there is another potential defendant out there. I think what those cases stand for is for the proposition that when there is a defense that's viable and that it is told that it's going to be presented and it's failed to be presented, that is ineffective assistance of counsel. And that's the exact situation that we have here, that she promised an alternative theory. She didn't promise a witness. No, but she promised an alternative theory of what happened here. And she failed to bring in any evidence that would support that theory. And based upon her failure to do that, the jury, what is the jury left with at that point? They're left with a defendant who is admitting to essentially everything that the state is saying, except for the critical part of this is the mental state. That's the only thing that was attempted to be contested at the time during this jury trial regarding this first part of this, the charge of offense. And none of that evidence was brought forth. So the jury is just left hanging, expecting the defense to present certain evidence. And that evidence is just never presented to them. And because of that, Mr. Robinson just never got his day in court. He had a right to challenge us. He had a right to present evidence to establish that this death was an accident. And he had a right to have the jury evaluate his entire defense that this was an accident. And when the jury didn't get all of the evidence related to why this was an accident, that's ineffective assistance of counsel. Well, wasn't it a binary choice? In other words, didn't he only have two choices? Either he did it with intent, or he did it by accident? In other words, it's just a binary choice. So that scene was planted in the jury's or fact finder's  So what else did defense counsel need to do? Present evidence of course. Like what? He needed to do what? Well, potentially his testimony. The testimony related to that this was not the first time that she suggested it, that he learned how to do it, exactly how he learned how to do it, whether he was actually using the techniques that he learned how to choke somebody during sex during this particular time. Well, maybe defense counsel interviewed the neurologist, and the neurologist said, I don't recall having that conversation. So maybe this was a trial strategy. Well, Judge, from the record, it shows that she attempted to ask these questions. And Mr. Wilkinson, or Dr. Wilkinson, was attempting to answer these questions. And these questions were never allowed into evidence because they came in through hearsay. But whether or not the defendant was going to advance that, we don't know. There could have been a number of reasons strategically why the defendant didn't himself, why Mr. Robinson didn't offer those explanations. Sure, I was just attempting to answer the question that was posed of what she could have possibly done. I don't want to take over your argument just on this single issue. I know you had other issues that you wanted to bring up. Yes, Your Honor. I don't know if there's any questions related to my other issues that Your Honors would like to ask. And I can save some time and directly answer those questions. How about other crimes evidence? Talk about that. Well, that's what the second part of this trial was about. It was about the other crimes evidence. And that was really the only thing that was contested at this trial. And the other crimes evidence essentially became a mini-trial in this case, where not only did the ex-girlfriend come in and testify, but another witness came in to testify to attempt to corroborate her testimony. This assumption. But doesn't the trial judge have wide discretion, I mean, to decide what comes in and what comes out? There is. There is. It is abuse of the discretion standard. But I would argue that in this situation, an abuse of discretion did occur, where the purpose, the Apollo Court and the Supreme Court routinely said that other crimes evidence shouldn't turn into a mini-trial. It shouldn't become the focus of the trial. It shouldn't take away from the evidence of the chartered offenses. That's exactly what happened here. This whole case was, like I said earlier, two parts. The first part of it was related to the chartered offense. And the second part of the trial was this mini-trial related to this other crimes evidence. I'm sorry, counsel, it's a seven-day jury trial. And it's one afternoon of testimony from Ms. Jones and the other witness. So how has that taken over the whole entire trial? Well, because of how the nature of the prior six days went. There was, as I was saying, that any evidence that was brought for on the charged offenses could have been brought by way of stipulation. There was no contest or challenge to the cell phone records. There was no challenge to where he was located. There was no challenge that he was going up and down from the south side of the city to the north side of the city back to Ms. Nitz's apartment. All of those expert witnesses that they brought forth and to testify to cell phone towers and signals, et cetera, all of that could have been stipulated to. Except his statement contradicts some of that cell phone data. In his statement to the police, he said he left around 5. And the cell phone data shows him still in that area by about 6, 10. So there's a discrepancy there. We're talking about an hour. The state argues all the time. Nobody's looking at their watches during this period of time. And it's not like we're talking about between 5 o'clock and 9 PM or 5 o'clock the next day. We're talking about 55 minutes, an hour difference. But that speaks to, counsel, the probative nature of circumstantial evidence and why the prosecution likes circumstantial evidence. Because it's this objective evidence that is hard to challenge in that fashion. Cell tower records and cell phone records, you can't change that data. And it is harder to challenge. But he never challenged it, Judge. Your Honor, what I would say, I'm sorry, Justice. What I would say is that he never contested that he was the last person to be with her, that he had sex with her before he left. He never contested any of that. So whether he left at 5 o'clock, 6 o'clock, all this evidence of cell phone tower records, he never challenged any of that. He fully admitted, even during the jury trial, the trial attorney's statements was none of that was contested. The only thing that was contested at trial or attempted to be contested at trial was the mental state. But all the other stuff that was, all the other evidence that was brought forth, was Mr. Robinson agreed to all of it, essentially. I mean, he didn't contest any of it. And so that's the reason why I'm saying that evidence could have been stipulated, too, because he would have agreed that, yeah, my cell phone would have shown me at this place. Yeah, my cell phone would have shown that I was in the south side to the north side, that I was with her during this period of time. The sole question was, how did she die? Did she die from an intentional act, or did she die from an accident? And as I was stating earlier, when the trial attorney makes a statement that this was a tragic accident and doesn't bring any evidence supporting that, that amounts to ineffective assistance. So based upon those reasons, Your Honor, we would respectfully request that you reverse Mr. Robinson's conviction and remand the matter for a new trial. Thank you, Counsel. Thank you. Good morning, Your Honors. Good morning. Good morning, Counsel. Assistant State's Attorney Jenna McMahon, on behalf of the people, may it please the Court. Turning first to the defendant's ineffective assistance of counsel claims, counsel never promised testimony from defendant's stepfather or any other witness, nor did she promise any exonerating evidence. What she did was exactly what a good opening statement is supposed to do. She previewed what the people's evidence would and would not show and argued reasonable doubt. Counsel highlighted the absence of the defensive wounds, victims partying and drug use, how she was found with blood on her nose in the pillow, and how the case was initially treated as non-criminal. Counsel explained how defendant voluntarily went to the police station, waved Miranda, and gave a detailed account in which he openly admitted placing the victim in a chokehold during claimed consensual sex, and that she was still alive when he left the apartment. Counsel also highlighted how defendant told the police about his conversation with his stepfather. Counsel was permissibly previewing defendant's own statements from his recorded interview, and she was building his credibility by showing how candid and forthcoming he had been with the police. So the jury would accept his account in the interview as true. Moreover, the stepfather did testify consistently with that preview. He confirmed that he was a retired neurologist, but counsel defended generally about sexual practices in the context of his relationship with the victim. Counsel delivered exactly what she referenced in opening. Other than the counsel tried to introduce the defendant's statements through the father, right? And that's what got objected to? When at trial, counsel tried to introduce Mr. Robinson's statement through Dr. Wilkins. She did ask an additional question about what was said, but the stepfather did testify consistently with what was previewed in opening. Other than he couldn't get in the defendant's statements, absent the defendant testifying himself? Correct. And furthermore, even if this court were to construe counsel's remarks as some kind of implicit promise, there is no prejudice. The evidence here was overwhelming. The medical examiner testified that the victim was murdered by strangulation, and with significant force. As shown by the deepening lying hemorrhage to her neck. We also have defendant's DNA, his recorded omission of placing her in a chokehold, jealous rage-filled text messages sent the morning of the murder, his immediate flight, the deactivation of his social media account, changing his phone number within days of the murder, and the properly emitted other crimes evidence, which included a prior choking incident of his former girlfriend. Which goes to show his motive, intent, absence of mistake, and propensity. What about Mr. Jalil's argument that the other crimes evidence turned into a mini-trial? It absolutely did not turn into a mini-trial. It came in through only two witnesses during one afternoon in a six-day trial with over 20 witnesses. The people also only referenced it briefly in closing, and the trial court itself observed that the people, and I quote, didn't beat the jury over their head with the particular evidence. On top of that, the trial court also gave a proper limiting instruction. So this did not turn into a mini-trial. Counsel was saying how this brought up the defendant's mental state, and how that was the only thing contested at the trial. That's not true. And I would like to also point out, even in closing, counsel argued that after the defendant left, the victim may have ingested cocaine while the roommates were smoking blunts in the back room. This was a reasonable doubt argument. And also, for the language of the, we'll tell you about the rest of this story that counsel brought up, counsel was directly responding to the people's opening statement. In the people's opening, we didn't mention the electronically recorded interview. We didn't mention how the defendant openly admitted placing the victim in a chokehold, and that she was still alive when he left. That was the rest of the story language that defense counsel was explaining to the jury that they would hear. And they did hear it. They heard, we presented, the people presented the interviews for the jury. So there was no promise of new witness testimony or specific heresy advice that was then abandoned. Therefore, that claim fails on both Strickland and Proms. And then got into the admission of other crimes evidence claim. The trial court did properly admit the four prior incidences of domestic violence involving Ms. Jones. After three separate pre-trial hearings, the trial court carefully weighed the probative value against the risk of undue prejudice and ruled the evidence admissible on all those grounds. These incidences were close enough in time. We're talking about gaps of one and a half to four and a half years. And it was actually similar. Each involved sudden, jealous, controlling violence against an intimate partner. The April 2017 choking incident was especially probative because it directly rebutted defendant's claim in his recorded interview that the strangulation here was consensual or accidental. The trial court also minimized any potential prejudice by excluding the order of protection. And then also when Ms. Jones briefly mentioned the bridge incident, immediately sustained defense counsel's objection, struck the testimony, and instructed the jury to disregard it. Some of the incidents, though, didn't seem as similar to the crime. Such as the one about the tie-dyer. So how was that incident similar enough that it justified coming in under the other crimes? Well, minor factual differences do not defeat admissibility. It was similar in the sense that Ms. Jones, she was starting to pull back from the relationship. And the defendant just showed up at her house. And she didn't want his help. And then he got upset and jealous. And as a result, he started to hit her and everything. So it is similar that there was this sudden, jealous, controlling violence against an intimate partner attributed by perceived disrespect or fear of abandonment. And then again, even if this court were to find any error, it was harmless. The evidence, again, was overwhelming. Therefore, the trial court did not abuse its discretion. And this court should reject that claim. I know that we only touched on two of the claims earlier. Were there any other claims that you guys or the court would like me to ask? It's your argument. OK. With that, for all these reasons and those stated in our brief, we would ask this honorable court to affirm. Well, just one last question. Wasn't it presidential to bring in other crimes evidence to the point that he choked another woman, so he probably choked this woman? So why would the jury not base their decision more on the past than what the actual evidence that was presented at trial would be? Are you following me? Yes, I do. So why should he not give him the trial based on that? The trial court did consider that he, the trial court, did weigh the probative value against the risk of undue prejudice. But he got it wrong, right? No, we would argue the court did not get it wrong. He got it right. Yes. Why? Convince me. Because the April 2017 choking incident was a special probative because it directly rebutted defendant's claim in his recorded interview that the strangulation was accidental and consensual. It was very relevant. And the- Well, Ms. Van, isn't it, in fact, the law that other crimes evidence in these domestic related charges is allowed for propensity purposes? Yes, correct. Section 115-7.4 allows for propensity evidence to be admitted for domestic violence prosecutions. And again, after three separate pretrial hearings, the trial court carefully weighed the probative value against the prejudice and found that the evidence was admissible for propensity, motive, intent, absence of mistake, and modus operandi. Are there any other questions? Could you have proved the case without it? In other words, theoretically, the judge had excluded all the other crime evidence. Would the outcome have been the same? Guilty, since you suggesting the evidence is so overwhelming? Yes, absolutely. Defendant was the last person seen with the victim alive. We have his recorded admission of him choking, placing the victim in a choke hold. We have his DNA on her neck. We have the medical exam, the ruling of homicide by strangulation with significant force, the jealous text messages that were sent that morning, and his immediate efforts to conceal himself. So therefore, the outcome would not have changed. So as a result, the trial court did not abuse its discretion, and this court should reject that claim. Thank you. For all those reasons, and those stated in our brief, we would ask this Honorable Court to affirm. Thank you, counsel. May I speak now? Mr. Duhail? Yes. Thank you. In regards to the state's argument that the trial counsel's opening statement was a preview of what the evidence would be, and that simply just belied on the record here. Every time that the trial counsel attempted to get into this argument about this being a tragic accident, the state objected, and they objected because it was going to be a misstatement of the evidence. So for them to now say that it was simply a preview is just untenable, considering the posture that they took during trial. The judge overruled those objections during the opening statement, right? So he allowed them to continue with the opening. Exactly. But the argument that they're making now is counter to the position that they took during when they made that objection, that it was a misstatement of the evidence. Now they're saying that it's a preview of the evidence, where a trial has said it was a misstatement of the evidence, and it can't be both. It's either a misstatement or it's a preview. And what's the language, specifically in the opening statement, that you believe was a promise by the defense lawyer to present additional evidence on the tragic accident theory? Well, the defense attorney just said that when she stated that this, excuse me, that she was going to provide the rest of the story, including what the state forgot to tell them, that this was a tragic accident, that this was not a murder. All of those statements is the promise, that there is another side of this story, that this death was a tragic accident. That is the evidence. That's the alternative defense. That's the alternative theory that she promised that she didn't do. And then in regards to, very briefly, in regards to the other crimes evidence, it's not just simply that the other crimes evidence that was allowed by the state was prejudicial. It was also the other crimes evidence that Ms. Jones, I believe her name was, who testified to all the additional facts of other crimes that didn't come in, especially related to her testimony related to Bernard Minor. Her testimony was that when Mr. Robinson found out that Minor died, he rejoiced in it, and that he claimed that he was responsible for causing the death. And this is in a first degree murder trial, where the jury is hearing evidence that portrayed my client as essentially a cold-blooded murderer, that not only allegedly murdered his ex-girlfriend, but he had the capability and the power to order the death of another person. And then when you coupled it with the testimony of the additional choking and how it was actually used by the state, numerous times during closing argument and rebuttal arguments, the state made the arguments that he did it before, that he did it again, that this is his pattern, that he gets upset, goes into a rage, and he chokes people. And then with the fact that the whole other testimony regarding Mr. Minor is that, it adds that not only is he violent towards his ex-girlfriend, he's just violent in general to everybody. And that's the whole purpose of why other crimes evidence should be excluded. It's not to portray my client as a bad person who's willing to be punished, and that's exactly what the state did here. With respect to the testimony of Mr. Minor, though, defense counsel objected to it. The court sustained the objection, struck the testimony, and gave the jury a limited instruction. Yeah, but the trial was out of the bag at that point,  So you're saying that's not sufficient to eliminate his punishments? Not in this case, Your Honor. It would be one thing if there was an isolated incident. It would be one thing if the state didn't hang their hat entirely during their closing arguments on propensity, that he had to have done this because he's done it before. And then all the other incidents, the tire iron incident, for example, that just portrays him as just being this crazy, wild person who falls into a fit of rage at the drop of a hat, that he comes over to try to help out with an iron. She says no, and then all of a sudden, she's been at, well, the testimony that came out at trial was different than what the proffer was made at the other crimes motion. But still, it comes out that he, at the drop of a hat, is violent. And coupled with this testimony regarding Mr. Minor, where he is essentially admitting to another murder, and not only admitting to the murder of it, but that he personally did it, but he ordered that murder to occur. That is highly prejudicial in a first-degree murder trial, especially in this situation where, despite the state's contention that the evidence in this case was overwhelming, it simply was not. The evidence regarding that he was the last person there, yes, but that he choked her, yes. But the evidence regarding the actual critical issue in this case of whether that choking was an intentional act or whether it was an accident, the evidence in there wasn't overwhelming. The only evidence that they really presented was that the medical examiner testifies that it caused by four pounds of force. I know that it's not fully, it's not in the record, but four pounds of force is nothing. That should have been challenged by trial counsel. I mean, four pounds of force is the equivalent of being able to move something or press a button with one finger. But this isn't something you are doing in your brief? No, no, it's not in the record, Judge. I think it's something- It's not in your brief either, or in the record? No, there's no record to support it, Judge. So it would definitely be something that would need to be raised in a post-conviction petition. But that evidence of four pounds of pressure is what the evidence that was brought forth of this choking. And that's not much. All right, well, anything that you wanna conclude with within the record? Thank you, Your Honor. Your Honor, for those reasons, and the reasons stated in our open brief and our reply brief, we request that you reverse Mr. Robinson's conviction, remand the matter for a new trial, or an alternative, remand the matter for a new sentencing hearing. Thank you, counsel. Thank you, Your Honor. Thank you. Thank you both for a well-argued hesitation. We'll take the matter under advisement and issue an opinion in due course. All rise.